UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIEL JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 2:16-cv-05287 |
| | : | |
| JOHN N. PERSON, | : | |
| | : | |
| Defendant. | : | |

**O P I N I O N**

**Defendant's Motion to Dismiss, ECF No. 13 – Granted**
**Plaintiff's Motion for Sanctions, ECF No. 34 – Denied**

Joseph F. Leeson, Jr.                                                          **March 30, 2018**
**United States District Judge**

I.      **Introduction**

Plaintiff Jamiel Johnson, a prisoner incarcerated at the State Correctional Institution at

Camp Hill who is proceeding *in forma pauperis*, brings this civil action against John N. Person,

the Deputy Prothonotary of the Pennsylvania Supreme Court. Johnson essentially alleges that

Person denied him access to the courts by failing to docket motions he filed in an effort to

challenge his murder conviction. Person has moved to dismiss Johnson's Amended Complaint.

For the following reasons, the Court grants Person's motion and dismisses the Amended

Complaint.[1]

---

[1]      After Person filed his Motion to Dismiss, Johnson filed a Motion for Sanctions, ECF No.
34, contending that Person's Motion to Dismiss was filed in bad faith, *see* Pl's Reply Br., ECF
No. 36. Johnson's Motion for Sanctions is without foundation and is denied.

## II.    Background

In April 2014, Plaintiff Jamiel Johnson, who is currently serving a life sentence for first degree murder, filed a petition with the Supreme Court of Pennsylvania challenging the constitutionality of Pennsylvania's murder statutes. *See* Am. Compl. 7, ECF No. 8.[2] On July 25, 2014, the Supreme Court denied Johnson's petition. *See* Def.'s Mot. Ex. A, ECF No. 13. On August 14, 2014, Johnson's case was closed, after the time for reargument had expired. Def.'s Mot. Ex. A. *See* Pa. R.A.P. 2542(a)(1) ("[A]n application for reargument shall be filed with the prothonotary within 14 days after entry of the judgment or other order involved.").

Here, Johnson alleges that on August 8, 2014—the last day on which to seek reargument—he timely mailed a motion for enlargement of time to request reargument to the Pennsylvania Supreme Court. Am. Compl. 11. He alleges that Defendant John N. Person, Deputy Prothonotary for the Pennsylvania Supreme Court, received this motion on August 27, 2014, but failed to file it with the court. Am. Comp. 7. Rather, Person sent the motion back to Johnson, along with a letter stating that Johnson's motion for enlargement of time was untimely. Am. Comp. 8. Johnson alleges that Person should have sent to him a Notice of Correction of Defect letter, providing Johnson an opportunity to show that he timely submitted his motion under the prison mailbox rule. Am. Compl. 8-11. He alleges that Person acted maliciously in failing to file his motion and that Person has previously stated to others that he dislikes Johnson. Am. Compl. 9-10. In addition, Johnson alleges that in October 2014 he submitted a second motion for enlargement of time to request reargument, which Person again declined to file and returned to Johnson. Am. Compl. 13.

---

[2]      When citing to the Amended Complaint, the Court uses the page numbers provided by the ECF system.

Based on these allegations, Johnson asserts that Person interfered with his constitutional right to access the courts. In addition to this claim, which appears to be the focus of his Amended Complaint, Johnson's Amended Complaint, as well as his supplemental filings, vaguely asserts various claims under federal and state law. His Amended Complaint seeks money damages as well as injunctive and declaratory relief.

## III. Analysis

### A. Any claims against Person in his official capacity are dismissed.

Person moves to dismiss any claims asserted against him in his official capacity as barred by the Eleventh Amendment. In Johnson's subsequent filings he has made clear that he seeks to sue Person only in his individual capacity. *See* Pl.'s Statement of Contentions 7, ECF No. 26. Accordingly, any claims asserted against Person in his official capacity are dismissed with prejudice.

### B. Person is not protected by absolute quasi-judicial immunity.

Person contends that he is protected by absolute quasi-judicial immunity from Johnson's claims because he was "performing a discretionary duty in determining that [Person's] two motions were untimely." Def.'s Resp. 8. Johnson responds that Person was not acting upon order of the court when he returned Johnson's motion. He further argues that the filing and docketing of legal papers is merely an administrative or ministerial task and is not a "judicial act" entitled to quasi-judicial immunity. Johnson is correct.

"The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993). In *Antoine*, the Supreme Court rejected the notion that an official should be afforded absolute immunity merely because that official is "part of the judicial function." *Id.* at 435. Rather, the

Court explained that the "touchstone" for the doctrine of judicial immunity has been

"'performance of the function of resolving disputes between parties, or of authoritatively

adjudicating private rights.'" *Id.* at 435-36 (quoting *Burns v. Reed*, 500 U.S. 478, 500 (1991)

(Scalia, J., concurring in judgment in part and dissenting in part)). Accordingly, "[w]hen judicial

immunity is extended to officials other than judges, it is because their judgments are functionally

comparable to those of judges—that is, because they, too, exercise a discretionary judgment as a

part of their function." *Id.* at 436 (internal quotation marks and alterations omitted).

Based on these principles, the Court in *Antoine* held that the function performed by court

reporters was not in the category of judgments functionally comparable to those of judges.

Rather, the duties of a court reporter, although important and requiring skill, were ministerial, not

discretionary, in nature.

Applying these principles to the duties of a prothonotary, this Court finds that

prothonotaries are not entitled to absolute quasi-judicial immunity. "[T]he Pennsylvania

Supreme Court has held that the duties of prothonotaries and clerks of court are ministerial."

*Funches v. Bucks Cty.*, 586 F. App'x 864, 867–68 (3d Cir. 2014) (citing *Com. v. Williams*, 106

A.3d 583, 588 (Pa. 2014)). "Accordingly, immunity of [prothonotaries] cannot be based on the

discretionary nature of their duties." *Id.*[3]

**C.      Johnson's state law claims are barred by the doctrine of sovereign immunity.**

Johnson asserts a variety of state law claims against Person, including "assumpsit,

detinuit, invasion of privacy, and breach of covenant." Am. Compl. 3. These claims are barred

by the doctrine of sovereign immunity.

---

[3]      Prothonotaries and other personnel are protected by absolute judicial immunity when they act according to a judge's directive. *See id.* But Person does not claim that when he declined to file Johnson's motions, he did so pursuant to a judge's directive.

"Pennsylvania law provides that Commonwealth employees enjoy immunity from most state law claims." *Robinson v. Beard*, No. CIV.A. 08-3156, 2013 WL 6022124, at *8 (E.D. Pa. Nov. 13, 2013)." Sovereign immunity shields Commonwealth employees from liability when their actions: (1) cannot fit into one of the nine statutory sovereign immunity exceptions; (2) are not negligent; and (3) occur within the scope of their employment. *Id.* The United States Court of Appeals for the Third Circuit has indicated that, under Pennsylvania law, conduct is within the scope of employment where: (a) it is the kind the employee is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by purpose to serve the master. *Id.* (citing *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000)).

Here, Johnson's claims do not fall within the sovereign immunity exceptions. Further, Person's alleged actions, "even if wrongful, necessarily were committed within the scope of" his duties as deputy prothonotary. *See Hill v. Barnacle*, 655 F. App'x 142, 148 (3d Cir. 2016). Accordingly, sovereign immunity shields Person from Johnson's state law claims and those claims are dismissed with prejudice.

**D.      Johnson's claims for declaratory relief are dismissed.**

Person moves to dismiss all claims of declaratory relief against him because such relief is not available to adjudicate past conduct. In his response to Person's Motion, Johnson acknowledges that his claims for declaratory relief are "frivolous." *See* Pl.'s Resp. 2, ECF No. 27. Accordingly, all such claims are dismissed with prejudice.

**E.      Johnson's claims for injunctive relief are dismissed.**

Person moves to dismiss all claims of injunctive relief against him as barred by § 1983 and because this Court lacks the authority to command state courts to take specific action. As with his claims for declaratory relief, Johnson acknowledges that his claims for injunctive relief

are "frivolous." *See* Pl.'s Resp. 2, ECF No. 27. Accordingly, all such claims are dismissed with prejudice.

**F.      Johnson fails to state a claim under 42 U.S.C. §§ 1981 and 1982.**

Person moves to dismiss any claims alleged against him under 42 U.S.C. §§ 1981 and 1982. Section 1981 "prohibits racial discrimination in the making and enforcement of contracts and property transactions." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001). The statute provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). "Like § 1981, § 1982 is a Reconstruction statute enacted to effectuate the aims of the Thirteenth and Fourteenth Amendments to the Constitution." *Brown*, 250 F.3d at 797. Section 1982 "prohibits racial discrimination in transactions relating to real and personal property." *Id.* The statute provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

Although Person mentions these statutes in the document filed at ECF No. 10, they have no possible application to the present case, which does not concern contractual rights or property rights, and any claims alleged under these statutes are dismissed with prejudice.

**G.      Johnson's access-to-the-court claims are barred by *Heck*.**

Under 28 U.S.C. § 1915, the court "shall dismiss" a case in which the litigant is proceeding *in forma pauperis* "at any time" if the court determines that, among other things, the action "fails to state a claim on which relief may be granted." Exercising this duty, the Court

dismisses *sua sponte* Johnson's access to the court claim under the doctrine established by *Heck v. Humphrey*, 512 U.S. 477 (1994).

As mentioned above, Johnson is primarily raising a constitutional claim, pursuant to 42 U.S.C. § 1983, for denial of access to the courts. Prisoners retain a constitutional right to access the courts to pursue direct or collateral challenges to their sentences and to challenge their conditions of confinement. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). A prisoner claiming that the defendant's actions "have inhibited [his] opportunity to present a past legal claim[] . . . must show (1) that [he] suffered an 'actual injury' – that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that [he has] no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Furthermore, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

Johnson's claim is premised on his allegations that Person's improper treatment of his motion and related filings denied him access to the courts by preventing him from successfully challenging his murder conviction. But to establish that Person denied him access to the courts, Johnson would have to show that the underlying challenge to his murder conviction had merit. Such a showing would necessarily imply the invalidity of his intact conviction. Johnson's claim is therefore not cognizable under § 1983. *See Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 142 (3d Cir. 2016) (per curiam) ("Coulston cannot demonstrate that the loss of his PCRA claim injured him unless he also demonstrates that his PCRA petition had merit, which necessarily would imply the invalidity of his murder conviction."). "When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice." *Brown v. City of Philadelphia*, 339 F. App'x 143, 145–46 (3d Cir. 2009) (alterations omitted). Accordingly, this claim is dismissed without prejudice to refiling in the event that his murder conviction is invalidated.

**H.      Johnson's remaining claims are dismissed with prejudice.**

Johnson's Amended Complaint and his subsequent filings mention a variety of other constitutional provisions, statutes, and legal theories, none of which provide a legal basis for a plausible claim against Person. Accordingly, all such claims are dismissed with prejudice.

**V.      Conclusion**

For the foregoing reasons, the Court dismisses Person's Amended Complaint. A district court should generally provide a pro se plaintiff with leave to amend unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). As Johnson cannot cure the deficiencies in his claims, he will not be given leave to amend. But

the Court will dismiss his access-to-the-courts claims without prejudice to reassertion in the

event Johnson is successful in invalidating his murder conviction.


BY THE COURT:


/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge